THOMAS M. BURTON (035856)
5820 Stoneridge Mall Road, Suite 100
Pleasanton, California 94588
(925) 484-3233
(925) 463-1560

P.O. Box 427
West Jordan, Utah 84084
(801) 556-3711
(801) 562-9352

Attorney for Plaintiffs Alva



## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

SERGIO ALVA, LUZ ALVA, and
SILVIO ALVA.

        Plaintiffs,

   v.

TEEN HELP, a partnership;;
WORLDWIDE ASSOCIATION OF
SPECIALTY PROGRAMS, a
corporation; ; RESOURCE
REALIZATIONS, a corporation ;
R&B BILLING, a corporation; DIXIE
CONTRACT SERVICES, a
corporation; TEEN ESCORT
SERVICES, a corporation; KEN KAY;
ROBERT B. LICHFIELD; KARR
FARNSWORTH; BRENT M. FACER,

        Defendants

———————————————/

No. 2:00CU169 C

**FIRST AMENDED COMPLAINT
FOR NEGLIGENCE; FALSE
IMPRISONMENT;  INTENTIONAL
INFLICTION OF EMOTIONAL
DISTRESS; BREACH OF
FIDUCIARY DUTY; FRAUD**

DEMAND FOR JURY TRIAL

---

First Amended Complaint             1



Come now the plaintiffs, Sergio Alva, Luz Alva and Silvio Alva, and allege as follows:

## PARTIES

1. Plaintiff Sergio Alva (Sergio) is the son of the plaintiffs Luz Alva, (Luz) and Silvio Alva (Silvio). Sergio was enrolled at Paradise Cove from 1997 to 1998 while he was a minor. All plaintiffs are citizens of the State of California.

2. The Worldwide Association of Specialty Programs is a non-profit corporation organized under the laws of the State of Utah with its principal place of business in St. George, Utah, of which Karr Farnsworth is the Executive Director. It is an umbrella organization controlling and regulating all Teen Help programs. It is the alter ego of each and every other named entity defendant, being under the control of and responsible to a centralized governing group of the named individual defendants, among others.

3. Teen Help is a non-profit corporation organized under the laws of the State of Utah with its principal place of business in St. George, Utah. It is the alter ego of each and every other named entity defendant, Robert B. Lichfield being its general partner, and answers to a centralized governing group of the named individual defendants. It purports to help desperate parents of at-risk teenagers put them in appropriate treatment centers, but, in practice, only refers them to its own stable of youth camps. It is the defendants' marketing arm to recruit adolescent inmates for Cross Creek Manor, Paradise Cove, Tranquility Bay, Casa By The Sea, and other cult camps run by some of the other defendants.

First Amended Complaint                              2

4. Dixie Contract Services is a corporation organized under the laws of the State of Utah, with its principal place of business in St. George, Utah. It is the alter ego of each and every other named defendant, being under the control of and responsible to a centralized governing group of the named individual defendants, among others. It hires and directs so-called escort services to kidnap adolescent candidates from their homes, often in the middle of the night, and take them by force to Brightway hospital for passport procurement before being transported abroad.

5. Teen Escort Services is a corporation organized under the laws of the State of Utah, with its principal place of business in St. George, Utah. It is the alter ego of each and every other named defendant, being under the control of and responsible to a centralized governing group of the named individual defendants, among others. It hires and directs so-called escort services to kidnap adolescent candidates from their homes, often in the middle of the night, and take them by force to Brightway hospital for passport procurement before being transported abroad.

6. R & B Billing is a corporation organized under the laws of the State of Utah, with its principal place of business in St. George, Utah. It is the alter ego of each and every other named defendant, being under the control of and responsible to a centralized governing group of the named individual defendants, among others. It bills and collects exorbitant fees charged by the various Teen Help cult centers by misrepresenting to insurance companies that the Teen Help programs are either therapeutic or educational depending on the

coverage available.

7. Resource Realizations is a corporation organized under the laws of the State of Utah, with its principal place of business in St. George, Utah  It is the alter ego of each and every other named defendant, being under the control of and responsible to a centralized governing group of the named individual defendants, among others.  It plans and conducts the behavior modification seminars for inductees and their parents, which modify the values and impair the psychological health of both groups.

8. Robert B. Lichfield is an owner, partner, shareholder, or otherwise directs the conduct and activities of each and every named corporate or partnership defendant.  He is a citizen of the State of Utah.

9. Karr Farnsworth is an owner, partner, shareholder, or otherwise directs the conduct and activities of each and every named entity defendant.  He was, at all times material, the director of Cross Creek Manor.   He is a citizen of the State of Utah.

10. Brent M. Facer is an owner, partner, shareholder, or otherwise directs the conduct and activities of each and every named entity defendant.   He is a citizen of the State of Utah.

11. Ken Kay was, at all time material, the director of Brightway Hospital in St. George, Utah.  He is a citizen of the State of Utah.

12. There exists, and at all times herein mentioned there existed, a unity of interest and ownership between defendants Lichfield, Farnsworth, Facer, and Kay, or some of them, on the one hand, and the entity defendants, whether

corporate, partnership, or otherwise styled, on the other hand, such that any individuality and separateness between defendants Lichfield, Farnsworth, Facer, and Kay, on the one hand, and the entity defendants, on the other hand, had ceased, and the entity defendants were and are the alter egos of the defendants Lichfield, Farnsworth, Facer, and Kay such that the individual defendants coordinated, controlled, directed, and oversaw the activities of all of the entity defendants and operated and profited from them as sole proprietorships without the requisite independent oversight or accountability of bona fide entity defendants.   Adherence to the fiction of the separate existence of the entity defendants and the named individual defendants would permit an abuse of the entity privilege and would sanction fraud and promote injustice by shielding the individual defendants from accountability to the plaintiffs and responsibility for the acts and conduct of the entity defendants, which are purposeful facades without assets, and thus unable to respond in damages for wrongdoing or liability.

13. The defendants Does I through X, inclusive, are sued under fictitious names. Their true names are unknown to the plaintiffs and will be added by amendment when ascertained.  They are, according to the plaintiffs' information and belief, jointly and severally liable for the acts and occurrences complained of.

14. Each defendant was, at all times material, the agent of each and all of the other defendants and all defendants conspired together or otherwise acted in concert in causing the acts and occurrences complained of.

## JURISDICTION

15. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331

and 1332(a)(1). The matter in controversy exceeds the sum of Seventy Five

Thousand Dollars, exclusive of interest and costs.


## VENUE

16. Venue is appropriate in this Court pursuant to the provisions of 28

U.S.C. § 1391(a) and (c).


## FACTS

17. Sergio's parents are not wealthy. His mother, Luz, teaches school. His

father, Silvio, is retired. Sergio had been abandoned at birth and was moved

from foster home to foster home until he was finally adopted by the plaintiffs

Luz and Silvio Alva. He was experimenting with drugs and doing poorly in

school. Defendants' henchmen entered Sergio's room at night and forcibly

removed him against his will and without his consent from his home in Riverside,

California to Brightway Hospital in St. George, Utah.

18. Brightway purported to perform a psychological evaluation of Sergio

for placement and customized treatment in the Teen Help program. While

posing as a hospital, Brightway was, in reality, merely a holding cell in which to

keep Sergio while his passports was processed on an involuntary and expedited

basis.

19. Sergio had once been on the antidepressant, Prosac. After he became

First Amended Complaint                                    6

clean and sober, he no longer needed Prosac because it had been determined that drug use had made him misbehave, not depression. Because, however, Sergio had resisted his confinement at Brightway, Brent Goates, M.D. prescribed 5 time the Prosac dosage Sergio had previously taken and from which he had already weaned himself. This sudden heavy overdose caused Sergio to experience drastic mood swings so that Dr. Goates further medicated him with some unknown drug to make him docile and sleepy.

20. When Sergio's passport was ready after one week, Defendants forcibly transported him against his will and without his consent out of the United States to the Island of Western Samoa.

21. Once in Samoa, Defendants took Sergio to a jungle compound called Le Tiera, surrounded by an 8 foot fence topped by barbed wire. Bathroom privileges were restricted to five minutes every hour with six sheets of toilet paper. The slightest infraction was severely punished. Sergio also learned, however, that the Samoan staff would provide street drugs and alcohol to the inmates in exchange for their clothes. Sergio asked his mother to send him Levis and other clothing which he then traded for drugs. Deprivation produced a veneration for food approaching worship. Water was rationed to 10 gallons a day for sixteen young men living in humid 100 degree heat.

22. Sergio began to rebel. He was put in isolation for seven days as punishment. Defendants' native guards struck Sergio in the face with their fists wrapped in towels. They taped his jaw shut with duct tape, hog-tied him with handcuffs and chains for three days. He had to eat like a dog from a bowl of

rice on the floor with his hands and feet tied behind him. Due to the abuse and deprivation, Sergio lost weight and was malnourished. After several beating episodes, Sergio was drugged by Joe Mitchell on orders of Dr. Goates.

23. After his return to California, Sergio could not escape the recurrent nightmares and reenactment of the abuses. He has ulcers and a strain of resistent bacteria caused by the Samoa experience. Because Sergio stood up to the defendants, they literally tried to break his will and reduce him to abject subservience, resulting in severe post-traumatic stress.

## FIRST CAUSE OF ACTION

### (Negligence)

24. Defendants owed Plaintiffs a duty to screen Sergio in order to protect him from induction into a boorish and brutal program whose rigors might foreseeably injure him. Defendants breached their duty by failing to screen Sergio out of their program and, to the contrary, by admitting him into a program which they knew, or should have known, would be detrimental to him.

25. Defendants owed Plaintiffs a duty to consult some reputable psychiatrist to determine whether or not Sergio should be on medication, the kind and dosage, and to assure that any medication was not over prescribed.

26. Defendants owed Plaintiffs a duty not to induct Sergio into their program unless and until they had Sergio's informed consent.

27. Defendants owed Plaintiffs a duty not to take Sergio out of the United States unless and until they had his written informed consent.

---

First Amended Complaint

28. Defendants breached their duty by inducting Sergio into their demented program, by failing to engage quality professional help, and by punishing Sergio as an criminal instead addressing any specific need justifying his presence at Paradise Cove, by prescribing and over prescribing medication designed to impair his will instead of treat him for illness, by abducting him into the program and by illegally removing him from the United States against his will and without his consent.

29. Defendants' conduct proximately Sergio personal injury and emotional distress from and after his 1996 induction to date.

30. Defendants' conduct was malicious, wanton, and in reckless disregard of Sergio's health, safety and welfare, by reason of which he is entitled to recover punitive damages against them.

WHEREFORE, Plaintiffs pray for judgment as hereafter stated.

## SECOND CAUSE OF ACTION

### (False Imprisonment)

31. Plaintiffs incorporate by this reference paragraphs 1 through 23 as if stated in full.

32. Defendants and their agents kidnapped Sergio from Riverside County, California against his will and without his consent.  They transported him across state borders to Utah against his will and without his consent.  In Utah, the defendants and their agents procured a United States passport against his will and without his consent.  Using the illegally procured passport, the

---

defendants and their agents transported Sergio against his will and without his consent out of the United States to the remote Republic of Samoa in the middle of the Pacific Island beyond the reach of civil liberty where he was confined for over a year until he was released upon his majority.

33. Defendants or some of them confined Sergio in a filthy, shabby, putrid, pestilential compound on limited food and water without contact with the outside world. In doing so, the defendants falsely and fraudulently abused the process of the United States by reason of which they deprived Sergio of a substantial liberty interest without due process of law.

34. Sergio learned upon arrival at Paradise Cove that his parents were unaware of its purpose and program. He sought at that time to communicate with them and to leave the program, but defendants or their agents censored his mail, restrained him from any contact with the outside world, and refused to permit his return home.

35. Defendants' imprisonment of Sergio in violation of his rights to due process of law caused him serious and permanent emotional distress, and psychological injury.

36. Defendants' conduct was malicious, wanton and in reckless disregard of Sergio's health, safety and welfare, by reason of which he is entitled to recover punitive damages.

WHEREFORE, Sergio prays for judgment against Defendants as hereafter stated.

## THIRD CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

37. Plaintiffs incorporate by this reference paragraphs 1 through 23 as if stated in full.

38. Defendants deprived Sergio of nutritious and wholesome food, proper sanitation, educational opportunities, exposed him to denigrating immoral and filthy conditions, subjected him to imprisonment, attempted to break his will, inflicted unjust punishment, deprived him of legal rights, kept him in isolation, deprived him of the care, comfort, support, and sustenance of his parents, all of which caused Sergio personal injury and mental and emotional distress.

39. Defendants' conduct was in reckless disregard of Plaintiffs' health, safety and welfare, by reason of which Plaintiffs are entitled to recover punitive damages.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereafter stated.


## FOURTH CAUSE OF ACTION

### (Breach of Fiduciary Duty)

40. Plaintiffs incorporate by this reference paragraphs 1 through 23 as if stated in full.

41. By seeking, and illegally obtaining physical custody of Sergio from his parents, and thereafter, by placing him into a captive and abusive environment of their own making, Defendants undertook a fiduciary duty

First Amended Complaint                                    1 1

toward the plaintiff parents as to Sergio's health, safety and welfare.

42. Defendants, in the manner described above, breached their fiduciary duty as parental surrogates, which proximately caused Sergio to sustain pain, suffering, bodily injury and mental and emotion distress.

43. Defendants' conduct was malicious, wanton and in reckless disregard of Plaintiffs' trust and of Sergio's health, safety and welfare, by reason of which Plaintiffs are entitled to recover punitive damages.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereafter stated

## FIFTH CAUSE OF ACTION

### (Fraud and Deceit)

44. Plaintiffs incorporate by this reference paragraphs 1 through 23 as if stated in full.

45. As part of a scheme and artifice to defraud, and, as a means by which Defendants could obtain money from Sergio's parents, Defendants, acting jointly and severally, falsely represented to Sergio's parents in their advertising brochure that their Paradise Cove program was an innovative and effective program for teens who are struggling in their home, school, or community. The brochure pictures an island paradise with tropical sunsets, verdant waterfalls, clean facilities, and happy youngsters "in the heart of Polynesia". It says nothing about the brutal, sadistic, filthy, brain washing environment that would give credit to the Nazi party.

46. None of the defendants' representations was true, but instead all of the above stated representations were false, and were made to Sergio's parents with the intent and for the purpose of causing them to pay Defendants large amounts of money, even though the cost for the services was negligible and the services themselves were detrimental.

47. The excessive amount charged by Defendants for the privilege of confining, abusing, and warehousing the young men, was fraudulent in that it was both far in excess of the actual costs incurred for the lack of any treatment provided, and was fraudulent as well in advancing the ruse that Defendants were providing a therapeutic, social, and educational experience approximating in value the yearly tuition charged.

48. Defendants concealed from Sergio's parents that he was receiving nothing of value from the program, and was, at worst, being over medicated on Prosac offset by unknown medications never consented to, bereft of the clothing bought and supplied by his parents, denied wholesome food, exposed to raw sewage, hog-tied and kept in isolation boxes for long periods of time; and brutally mistreated by savages.

49. Defendants made the aforesaid false statements and concealments knowing them to be untrue. This, they did for the purpose and with the intent that Sergio's parents would give Defendants custody and control over Sergio without his consent and would keep him in the defendants' confinement until Defendants were willing to release him.

50. Plaintiff parents reasonably and justifiably relied upon Defendants'

First Amended Complaint                          13

concealments, propounded falsities, and misrepresentations of true facts in entrusting, at great sacrifice, their struggling young sons to the off-shore private prison.

51. Defendants' knowing and intentional failure to disclose material facts and their deliberate concealment and misrepresentations of material facts in order to induce Sergio's placement with them in Utah and Samoa constitute acts of fraud and deceit.

52. Defendants' conduct was malicious, wanton and in reckless disregard of the parents' trust and of the boys' health, safety and welfare, by reason of which Plaintiffs are entitled to recover punitive damages.

WHEREFORE, Plaintiffs pray for judgment as follows:

FIRST CAUSE OF ACTION FOR NEGLIGENCE:

   a. Special damages according to proof.

   b. General damages according to proof

   c.  Punitive damages according to proof

SECOND CAUSE OF ACTION FOR FALSE IMPRISONMENT:

   a. Special damages according to proof.

   b. General damages according to proof.

   c. Punitive damages according to proof.

THIRD CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS:

   a. Special damages according to proof.

   b. General damages according to proof.

    c. Punitive damages according to proof.

FOURTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY:

    a. Special damages according to proof.

    b. General damages according to proof.

    c. Punitive damages according to proof.

FIFTH CAUSE OF ACTION FOR FRAUD AND DECEIT

a. Special damages according to proof.

b. General damages according to proof.

c. Punitive damages according to proof.

Dated: April 25, 2001

_____

Thomas M. Burton

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that a true and exact copy of the foregoing FIRST AMENDED

COMPLAINT was served upon the Defendants by placing the same in the United States Mail,

postage prepaid, on the 2nd day of May, 2001, to the following:

Fred R. Silvester
Dennis J. Conroy
Spencer Siebers
SILVESTER & CONROY, L.C.
230 South 500 East, Suite 590
Salt Lake City, Utah 84102