FRED R. SILVESTER (3862)
DENNIS J. CONROY (0712)
SPENCER SIEBERS (8320)
SILVESTER & CONROY, L.C.
230 South 5th East, Suite 590
Salt Lake City, Utah 84102
Telephone (801) 532-2266

Attorneys for Teen Help L.L.C., Worldwide Association of Speciality
Programs, Inc., R&B Billing L.L.C., Dixie Contract Services L.L.C.,
Robert B. Lichfield, Karr Farnsworth and Brent M. Facer

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SERGIO ALVA, LUZ ALVA and SILVIO ALVA, | |
| Plaintiffs, | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| TEEN HELP, a partnership; WORLDWIDE ASSOCIATION OF SPECIALTY PROGRAMS, a corporation; RESOURCE REALIZATIONS, a corporation; R&B BILLING, a corporation; DIXIE CONTRACT SERVICES, a corporation; TEEN ESCORT SERVICES, a corporation; KEN KAY; ROBERT B. LICHFIELD; KARR FARNSWORTH; BRENT M. FACER, | Civil No. 2:00CV-00169 C<br><br>Judge Tena Campbell |
| Defendants. | |

Defendants Teen Help, World Wide Association of Specialty Programs, R&B Billing, Dixie

Contract Services, Robert Lichfield, Karr Farnsworth and Brent Facer (referred to herein collectively



as the "Teen Help Defendants") submit this Memorandum in Support of Defendants' Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323; 106 S. Ct. 2548, 2552 (1986). Plaintiffs have failed to produce admissible evidence to support their claims for negligence, breach of fiduciary duty, intentional infliction of emotional distress and fraud. Plaintiffs' false imprisonment claim is barred by the statute of limitation. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex*, 477 U.S. at 323; 106 S. Ct. at 2553. Therefore, these Teen Help Defendants move this Court for summary judgment disposing of plaintiffs' factually unsupported claims.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Plaintiffs' claims arise out of the enrollment of Sergio Alva in a behavior modification program for at-risk teenagers called Paradise Cove. *See* First Amended Complaint, attached hereto as Exhibit A.

2. Since returning from Paradise Cove, Sergio completed high school. His high school in California accepted credit for classes Sergio took at from Paradise Cove. *See* Sergio Alva deposition at 88, attached at Exhibit B.

3. Sergio is currently employed and has held his current job for more than three years. *Id* at 9.

4. Sergio is planning on returning to college to be an x-ray technician. *Id.* at 13.

5. Sergio lives with his girlfriend and young son. *Id.* at 13.

6. Prior to enrollment at Paradise Cove, Sergio had been suspended multiple times from school and eventually expelled. *Id.* at 18.

7. Sergio was in a gang in Riverside. *Id.* at 19.

8. Sergio was abusing drugs and alcohol. *Id.* at 19.

9. Sergio had individual substance abuse counseling with Mr. Carlos Lopez at a Kaiser clinic near his home. *Id.* at 22. Sergio also participated in group therapy for substance abuse and attended Narcotics Anonymous meetings. *Id.* at 23 and 30.

10. The counseling helped for a time, but peer pressure returned Sergio to gangs and drugs. *Id.* at 22.

11. Mrs. Alva called Sergio's substance abuse counselor at Kaiser, Mr. Lopez, and asked how to help Sergio. *See* Luz Alva deposition at 30, attached as Exhibit C.

12. Mr. Lopez referred Mrs. Alva to a parent of a teenager who had been at Paradise Cove. *Id.* at 30.

13. Mrs. Alva called and spoke with the parent who referred Mrs. Alva to Teen Help. *Id.* at 34.

14. Mrs. Alva called Teen Help in January, 1996. *See* Teen Help Pre-Admission Screening Form, dated January 7, 1996, attached as Exhibit D.

15. Teen Help sent Mrs. Alva a videotape and reference sheet for Paradise Cove. *Id.*

16. Mrs. Alva called some of the persons on the reference list and the list has check marks

next to several of the names. *See* Luz Alva deposition at 94; Reference Sheet attached as Exhibit E. Mrs. Alva did not investigate any other programs. *Id.* at 47.

17. Then, in April of 1996, after Sergio threatened to run away, Mr. and Mrs. Alva determined to enroll Sergio at Paradise Cove. Sergio had stayed out late with his friends and Mrs. Alva had gone to look for him. When she found him, Sergio told her he did not want to live with her anymore. Mrs. Alva gave Sergio $10 dollars, but Sergio did not run away. *See* Luz Alva deposition at 29-30.

18. Mr. and Mrs. Alva decided, together, to send Sergio to Paradise Cove. *Id.* at 67.

19. On April 10, 1996, both Mr. And Mrs. Alva signed the Paradise Cove Enrollment Agreement. *See* Paradise Cove Enrollment Agreement, attached at Exhibit F.

20. On the signature page of the Enrollment Agreement it states, "Sponsors hereby acknowledge that they have read the entire Enrollment Agreement and that they understand and agree to its provisions." *Id.*

21. Sergio first went to Brightway Adolescent Hospital in St. George, Utah. There he saw Dr. Goates, a psychiatrist, and also had a physical examination. *See* Sergio Alva deposition at 40-41.

22. Sergio claims he was never physically injured at Brightway. *Id.* at 47.

23. From Brightway, Sergio traveled to Paradise Cove. *Id.* at 48.

24. Sergio claims he was punched, kicked and hit with a wooden paddle at Paradise Cove. *Id.* at 52.

25. Sergio claimed these were forms of punishment for breaking the rules or refusing to participate in the program. *Id.* at 54.

26. Sergio never received any treatment for any injuries he alleged to have suffered at Paradise Cove. *Id.* at 32. Sergio testified, as a result of enrollment at Paradise Cove, the sight of palm trees "bugs" him, he does not go to the beach at all, and when he is reminded of Paradise Cove, "I clam up. I get angry. I get angry and I clam up and stuff." *Id.* at 62-63.

27. Mrs. Alva claims to feel guilty and angry about sending Sergio to Paradise Cove. *See* Luz Alva deposition at 73.

28. Mrs. Alva does not claim any physical harm arising out of Sergio's enrollment. *Id.* at 73-74.

29. Mr. Alva does not claim to have suffered any physical injury as a result of Sergio's enrollment. *See* Silvio Alva deposition at 16, attached as Exhibit G

30. Neither Mr. or Mrs. Alva ever spoke with Robert Lichfield. *See* Silvio Alva deposition at 15; *see* Luz Alva deposition at 52.

31. Neither Mr. or Mrs. Alva has ever spoken with Karr Farnsworth. *Id.*

32. Neither Mr. or Mrs. Alva has ever spoken with Brent Facer. *Id.*

33. Sergio Alva left Paradise Cove in August of 1997. *See* Luz Alva deposition at 62.

34. Sergio turned eighteen (18) on July 13, 1998. *Id.* at 15.

## ARGUMENT

### I. PROCEDURAL POSTURE AND CASE HISTORY

Plaintiffs' initial Complaint was file February 25, 2000, and was dismissed April 14, 2000, some matters without prejudice. Plaintiffs' First Amended Complaint eliminating certain parties and restating claims against the Teen Help defendants was filed April 25, 2001. Defendant's

moved to dismiss the Amended Complaint May 9, 2002 for failure to state a cognizable claims and intentional tort claims were barred by the Statute of Limitations. This Court denied the motion October 21, 2002 allowing discovery to go forward. The plaintiffs have been deposed and it is clear none of the three have facts to support claims against these defendants. The only complaints are against Paradise Cove.

## II.   PLAINTIFFS HAVE FAILED TO PRODUCE ANY ADMISSIBLE EVIDENCE OF NEGLIGENCE

Plaintiffs' complaints arise out of conduct that allegedly occurred at Paradise Cove in Western Samoa. Yet, plaintiffs in their amended complaint did not sue Paradise Cove. Instead plaintiffs sued these Teen Help Defendants for negligence in allowing Sergio Alva to go to Paradise Cove. "A prima facie case of negligence requires a showing of: (1) a duty of reasonable care extending to plaintiff; (2) breach of that duty; (3) proximate and actual causation of the injury; and (4) damages suffered by plaintiff." *Williams v. Melby*, 699 P.2d 723, 726 (Utah 1985). Plaintiffs, as a matter of law, have failed to establish a prima facie case of negligence.

Plaintiffs claim Sergio Alva was punched, kicked and hit with a wooden paddle at Paradise Cove by unidentified Paradise Cove staff. Plaintiffs did not sue Paradise Cove for these alleged intentional torts, but rather sued these Teen Help defendants for failing to protect Sergio from such conduct. Sergio's parents, furthermore, claim to have suffered emotional distress once they learned of the alleged assault or abuse of Sergio.

### A.   The Teen Help Defendants Did Not Owe a Duty to Protect Sergio Alva

In Utah, "[t]he law imposes upon one party an affirmative duty to act only when certain

special relationships exist between the parties." *Beach v. University of Utah*, 726 P.2d 413, 415 (Utah 1989). "These relationships generally arise when one assumes responsibility for another's safety or deprives another of his or her normal opportunities for self-protection." *Id.* Thus, to avoid summary judgment, plaintiffs are "obligated to prove that [Sergio] had a special relationship with [the Teen Help Defendants] to supervise and protect [him] and that the duty was breached, causing [him] injuries." *Id.* The duty to protect normally requires custody or direct supervision. *See Owens v. Garfield*, 784 P.2d 1187, 1189 (Utah 1989)(finding state did not have sufficient control or supervision over unlicensed day care provider to impose duty).

Plaintiffs have failed to produce any admissible evidence of the custody or direct supervision of Sergio by these Teen Help Defendants. Rather, Sergio was picked up from his home by an escort company (allegedly Teen Escort Services in plaintiffs' complaint a party never identified or served), taken to Brightway Adolescent Hospital, and then to Paradise Cove. *See* Undisputed Facts Nos. 21 and 23. Plaintiffs did not sue any of these entities, yet there is no evidence any of the Teen Help Defendants ever had custody or control of Sergio. Without any evidence of a special relationship arising out of such custody or control, these Teen Help Defendants cannot be held liable for the alleged intentional torts of other persons.

**B.     The Teen Help Defendants Did Not Owe a Duty to Mr. or Mrs. Alva**

Sergio's parents claim emotional distress arising out of Sergio's enrollment at Paradise Cove. Yet, without being in the zone of danger of the alleged injurious conduct, the Alvas may only recover if they were the direct victims of negligence. "[T]he rule ensures that a plaintiff sues only in his own right for a wrong personal to him, and not as the vicarious beneficiary of a breach of duty

7

to another." *Straub v. Fisher & Paykel Health Care*, 1999 UT 102, ¶ 15; 990 P.2d 384, 389 (citations omitted). In *Straub*, a respiratory therapist sued the manufacturer of a defective ventilator for negligence after she watched a patient suffocate to death. The therapist was in no personal danger, but suffered severe emotional distress from witnessing her patient's death. The Utah Supreme Court held the manufacturer's duty ran only to the patient, the direct victim of the harm, not the therapist. *Id.* As set forth above, these Teen Help Defendants owed no duty to Sergio, the alleged direct victim of the negligence. Mr. And Mrs. Alva cannot be owed a greater duty as indirect victims. Thus, as a matter of law, the Alvas cannot recover as indirect victims of the alleged negligence.

Moreover, even as direct victims, the Alvas are required to demonstrate they suffered bodily harm. According to the Utah Supreme Court, "[s]uch a requirement provides a check on feigned disturbances, thereby ensuring the genuineness of claims." *Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970, 974 (Utah 1993) (rejecting negligence claim of workers exposed to asbestos who suffered anxiety and sleeplessness). The Court further found, "emotional disturbance that is not severe enough to result in illness or physical consequences is likely to be in the realm of the trivial. Such a disturbance is likely to be so temporary and subjective that to attempt to compensate it would unduly burden defendants and the courts." *Id.* Accordingly, Utah law requires some sort of physical injury or physical manifestation of emotional distress.

Here, Mrs. Alva stated she felt guilty and angry for sending Sergio to Paradise Cove, but suffered no physical harm. Undisputed Fact No. 27-28. Similarly, Mr. Alva testified he suffered no physical injury arising out of Sergio's enrollment at Paradise Cove. *Id.* at 29. Utah courts have not considered whether feelings of guilt constitute emotional distress. Other courts that have

8

considered the position have ruled feelings of guilt are insufficient to state a claim for negligence. *Anderson v. Scheffler*, 752 P.2d 667 (Kan. 1988)(dismissing plaintiff's negligence claim based on shock, emotional pain, guilt, nightmares and depression after brother lost leg in injury at work in plaintiff's presence); *Trisuzzi v. Tabatchnik*, 666 A.2d 543 (N.J.App. 1995)(rejecting plaintiff's negligence claim based on her nightmares, anxiety and guilt over not being able to protect her daughter from dog mauling). Utah law is clear, however, that some physical harm is required. Since there is no evidence of physical harm in this case, the Alvas cannot maintain a claim for negligence.

Plaintiff Sergio Alva had no relationship with these defendants from which any duty arises, the parties who at various time we given his custody by his parents are not parties to this case. The parents likewise enrolled their son in Paradise Cove and any duty owed was owed by Paradise Cove, in addition the parents suffer no injuries cognizable under Utah law, therefore not a single element of a negligence claim is satisfied by any of the plaintiffs' as to these defendants.

### III. PLAINTIFFS' FALSE IMPRISONMENT CLAIM IS BARRED BY THE STATUTE OF LIMITATION

Sergio Alva's claim for false imprisonment, even had the proper parties been sued, is barred by the statute of limitation. Under Utah law, a claim for false imprisonment must be brought within one year. *See Utah Code Ann.* § 78-12-29(4). Here, Sergio Alva left Paradise Cove in August of 1997. *See* Undisputed Fact No. 33. He turned eighteen (18) on July 13, 1998. *Id.* at 34. Therefore, the latest Sergio could have brought a claim for false imprisonment was July 13, 1999. The original complaint in this action was not filed until February 25, 2000. *See* Complaint, attached at Exhibit H.

## IV. PLAINTIFFS HAVE FAILED TO PRODUCE EVIDENCE OF A CONFIDENTIAL RELATIONSHIP TO SUPPORT A CLAIM OF BREACH OF FIDUCIARY DUTY

Plaintiffs have failed to produce admissible evidence of any confidential relationship required to create a fiduciary duty running from any of the Teen Help defendants to them. Under Utah law, "[i]n order to establish a fiduciary relationship, a party must prove facts establishing dependency by one party on the other, and a voluntary assumption of a duty by the other party to advise, counsel and protect the weaker party." *Bower v. Stein Eriksen Lodge Owners Assoc., Inc.*, 201 F. Supp. 2d 1134, 1144 (D.Utah 2002) (dismissing fiduciary duty claim by homeowners against real estate developers who built additional units interfering with homeowners' view); *quoting Von Hake v. Thomas*, 705 P.2d 766, 769 (Utah 1985). "A confidential relationship arises when one party, having gained the trust and confidence of another, exercises extraordinary influence over the other party." *Kuhre v. Goodfellow*, 2003 UT App 85, ¶ 18.

Here, the Alvas had no contact with Robert Lichfield, Karr Farnsworth or Brent Facer. *See* Undisputed Facts Nos. 30-32. The only contact any plaintiff had with any Teen Help Defendant was Mrs. Alva's telephone calls to Teen Help after referral by one of Sergio's therapist. (who also in not a party here.)

According to *Von Hake*, evidence establishing a confidential relationship between the parties which may give rise to fiduciary duties. However, the evidence would have to suggest that Mrs. Alva so trusted Teen Help that it was able to substitute its will for hers; or evidence that Mrs. Alva had a long-established relationship of trust with Teen Help; or evidence that Teen Help's relationship to Mrs. Alva was one which traditionally imposes fiduciary duties such as an attorney-client

10

relationship; or evidence that Mrs. Alva was feeble, aged, or not in full possession of her faculties when she contacted Teen Help such that Mrs. Alva relinquished control over her own decision making; or evidence that Teen Help attempted to gain Mrs. Alva's trust or ingratiate itself with her. *Von Hake*, 705 P.2d at 770. As a matter of law, Mrs. Alva's relationship with Teen Help cannot give rise to a fiduciary duty.

Here, Mrs. Alva first contacted Sergio's substance abuse counselor at Kaiser for help. *See* Undisputed Fact No. 11. He told Mrs. Alva of a parent who's son had gone to Paradise Cove and gave her the parent's telephone number. *Id.* at 12. Mrs. Alva called and spoke with the parent who referred her to Teen Help. *Id.* at 13. Mrs. Alva called Teen Help and spoke briefly with a Teen Help representative about Paradise Cove. *Id.* at 14. Teen Help sent Mrs. Alva a video and reference list about Paradise Cove. *Id.* at 15. Mrs. Alva called some of the persons on the reference list, but did not investigate any other programs. *Id.* at 16. After Sergio threatened to run away some months later, the Alvas decided, together, to enroll Sergio at Paradise Cove. *Id.* at 17-18. They both signed the Paradise Cove Enrollment Agreement. *Id.* at 19.

There is no evidence Teen Help substituted its will for the Alvas. It was Sergio's counselor who first referred Mrs. Alva to Paradise Cove and Mrs. Alva who had the only contacted with Teen Help. It is undisputed the Alvas did not have a long established relationship with Teen Help, only hearing of the entity shortly before enrolling Sergio. Moreover, the relationship of Teen Help as a marketing agency and the Alvas as consumers is not the type of relationship traditionally endowed with fiduciary duties. The Alvas had four months to review materials on Paradise Cove and both read and signed the detailed Enrollment Agreement. There is every evidence the Alvas were in full

11

possession of their faculties when they made the determination to enroll Sergio. Finally, there is no evidence Teen Help did anything to ingratiate itself with the Alvas. Rather, Teen Help merely responded to the Alvas requests for information and assisted in Sergio's enrollment at Paradise Cove.

Without the requisite evidence supporting the existence of a confidential relationship, there can be no claim for breach of fiduciary duty. "The law presumes that one ordinarily makes his or her own judgments, however imperfect, and acts on them; it does not readily assume that one's will has been overborne by another. Therefore, the law does not lightly recognize the existence of a confidential relationship." *Von Hake*, 705 P.2d at 769. As articulated by the Tenth Circuit, "[f]or the plainest of reasons, agreements establishing fiduciary relationships, if not in writing, must be clear and convincing." *In re: Villa West Assoc. v. Kay*, 146 F.3d 798, 807 (10th Cir. 1998), *quoting Gillespie v. Seymour*, 796 P.2d 1060, 1063 (Kan.App. 1990). In this case, the Alvas have failed to produce any evidence, much less clear and convincing evidence, of a confidential relationship. Therefore, these Teen Help Defendants are entitled to summary judgment on plaintiffs claim for breach of fiduciary duty.

### V. PLAINTIFFS HAVE FAILED TO PRODUCE EVIDENCE TO SUPPORT A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

These Teen Help Defendants are entitled to summary judgment on Sergio Alva's claim for intentional infliction of emotional distress. Under Utah law, to state a claim for intentional infliction of emotional distress, Sergio must prove these Teen Help Defendants "intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; and his actions are of such a nature as

to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality." *Franco v. Church of Jesus Christ of Latter-Day Saints*, 2001 UT 25, ¶ 25; 21 P.3d 198, 206 (citations omitted). In *Franco*, plaintiff sued defendant church for referring her to an unlicensed therapist who allegedly gave her inadequate counseling. The Utah Supreme Court upheld dismissal of plaintiff's intentional infliction of emotional distress claim because there was no allegation "that the LDS Church Defendants referred her to [the therapist] for the *purpose* of inflicting emotional distress." *Franco*, 2001 UT at 25 at ¶ 27; 21 P.3d at 206 (emphasis in original).

Similarly, plaintiffs have not produced admissible evidence these Teen Help Defendants did anything to Sergio with the purpose of inflicting emotional distress. Sergio testified he thought his parents sent him to Paradise Cove, "[b]ecause they thought it would be a good program for me." *See* Sergio Alva deposition at 18. He further testified he thought the purpose of the Paradise Cove program "was to better us, to stop what we were doing in the United States and for us to become better people." *Id.* at 51. Even the alleged abuse, according to Sergio, was a form of punishment for breaking the rules or not participating in the program. *See* Undisputed Fact No. 25. There is no evidence the conduct Sergio complains of was done with the purpose of inflicting emotional distress, even by Paradise Cove on him or his parents.

The case against these Teen Help Defendants is even more clear. Plaintiffs only allege, without evidence, that the Teen Help Defendants sought Sergio's enrollment at Paradise Cove "for the purpose of causing [his parents] to pay Defendants large amounts of money." *See* First Amended Complaint at 13. There is no evidence, or even allegation, these Teen Help Defendants sought

Sergio's enrollment at Paradise Cove for the purpose of inflicting emotional distress. Thus, Sergio's claim must fail as a matter of law.

Sergio's claim must also fail because, as a matter of law, Teen Help's assistance in enrolling Sergio at Paradise Cove was not outrageous and there is no evidence of severe emotional distress. "Whether the distress is severe enough and the alleged conduct is outrageous enough to support an action for the intentional infliction of emotional distress are initially legal questions for the court to resolve." *Johnston v. Davis Security, Inc.*, 217 F. Supp. 2d 1224, 1232 (D.Utah 2002)(citations omitted). Conduct is outrageous and intolerable when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized society." *Id.* Here, there is no admissible evidence of any conduct of these Teen Help Defendants beyond Teen Help's assistance of the Alvas in enrolling Sergio at Paradise Cove. As a matter of law, assisting a parent with enrollment of her son in a behavior modification program is not outrageous nor intolerable.

Likewise, "the law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it." *Schuurman v. Shingleton*, 2001 UT 52, ¶ 23; 26 P.3d 227, 233. Sergio testified, as a result of enrollment at Paradise Cove, the sight of palm trees "bugs" him, he does not go to the beach at all, and when he is reminded of Paradise Cove, "I clam up. I get angry. I get angry and I clam up and stuff." *See* Undisputed Fact No. 26. This does not indicate distress so severe a "reasonable person normally constituted would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Johnston*, 217 F. Supp. 2d at 1232. Accordingly, as a matter of law, Sergio's claimed emotional distress is insufficient to support a cause of action for intentional infliction of emotional distress.

## VI. PLAINTIFFS HAVE FAILED TO PRODUCE CLEAR AND CONVINCING EVIDENCE OF FRAUD

Under Utah law, the Alvas must produce clear and convincing evidence of a (1) representation; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either knew to be false or had insufficient information to represent; (5) for the purpose of inducing the other party to act upon it; (6) that the other party reasonably relied on the representation; (7) was thereby induced to act; and (8) was damaged or injured. *See Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶ 41; 56 P.3d 524, 536; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254; 106 S. Ct. 2505, 2513 (1986)(holding trial judge must consider "actual quantum and quality of proof" in case where clear and convincing evidence required).

Mrs. Alva was asked to state any alleged misrepresentations made to her by these Teen Help Defendants about Paradise Cove.

> Q: Do you recall anything, this initial phone call to Utah, do you recall anything the person on the phone told you about Paradise Cove?
>
> A: Probably he or she convinced me that was the best program ever.
>
> Q: Do you recall anything specifically that they told you about Paradise Cove?
>
> A: That there are several very happy children that they were doing perfectly after they came back from Samoa.
>
> Q: Anything else?
>
> A: No.
>
> Q: Besides the happy children that were doing well after being in the program, anything else that you remember the person on the phone telling you about Paradise Cove?

15

> A: The best of everything. I wouldn't ever send Sergio to a place that – if you are the representative of that program, you are never going to talk against the program. You will paint it very well. And that's what I got.

*See* Luz Alva deposition at 36-37.

Here, there is no evidence of any misrepresentation of a presently existing material fact. Indeed, if Teen Help's alleged statements are anything, they are "puffing," as admitted by Mrs. Alva. The Utah Supreme Court recently analyzed the difference between actionable statements of fact and mere statements of opinion in *Boud v. SDNCO, Inc.*, 2002 UT 83; 54 P.3d 1131. There, plaintiff sought to rescind a purchase contract of a yacht based on alleged material misrepresentations. Plaintiff asserted he relied on a sales brochure showing the boat in question speeding through the water with the caption, "[o]ffering the best performance and cruising accommodations in its class, the 3375 Esprit offers a choice of either stern drive or inboard power, superb handling and sleeping accommodations for six." Upon driving the boat, plaintiff discovered numerous problems which the seller agreed to repair under the boat's warranty. Plaintiff, however, sued for fraud to rescind the purchase agreement.

The Supreme Court found plaintiff's claim, "hinge[d] upon an examination of whether representations made by the seller were mere statements of opinion or were, rather, promises or affirmations of fact." *Boud*, 54 P.3d at 1135. "To qualify as an affirmation of fact, a statement must be objective in nature, i.e., verifiable or capable of being proven true or false." *Id.* Such statements are actionable in fraud. In contrast, "[t]he general praise of his own wares by a seller, commonly called 'puffing,' for the purpose of enhancing them in the buyer's estimation, has always been allowed." *Id., quoting Hirschberg Optical Co. v. Dalton, Nye & Cannon Co.*, 27 P. 83 (1891).

The Court ruled representations claiming "best performance" and "superb handling" were inherently subjective, not statements of fact. *Id.*; *accord Universal C.I.T. Credit Corp. v. Sohm*, 391 P.2d 293, 264 (Utah 1964) (finding no fraud cause of action for statement that new microwave oven "would cover all plaintiff's cooking needs"); *Ackerman v. Bramwell Inv. Co.*, 12 P.2d 623, 626 (Utah 1932) (finding no fraud cause of action for statement that promissory note "was as good as gold" and plaintiff "would not lose a penny"); *Stuck v. Delta Land & Water Co.*, 227 P. 791 (Utah 1924) (finding no fraud cause of action for statements that farming in the Pahvant Valley was the "best", "remarkable", "prosperous" and "abundant" due to "deep, rich and responsive" soil).

Likewise, statements about "happy" children, doing "perfectly" after graduating from the program, and the program offering the "best of everything" are incapable of supporting a fraud claim. These Teen Help Defendants, therefore, are entitled to summary judgment.

## SUMMARY

Plaintiffs' have no evidence to establish a single claim against the Teen Help defendants. None of the plaintiffs' knows any of the individuals named as defendants, the only claims made in the Amended Complaint against Teen Help, World Wide Association of Specialty Programs, R&B Billing, Dixie Contract Services Ken Kay, Robert B. Lichfield, Karr Farnsworth and Brent Facer are claims of breach of duty (due care and fiduciary), false imprisonment and fraud based upon Sergio Alva's enrollment in the Paradise Cove program in Western Samoa. The sole contact any plaintiff had with these defendants was a contact Mrs. Alva had with Teen Help to get information about Paradise Cove. After four months of considering the information supplied and contacting other parents, Mr. and Mrs. Alva voluntarily enrolled there son, contacted an escort service to place there

17

son in Brightway Adolescent Hospital and later to escort him to Paradise Cove. By plaintiffs' own admissions, any claim they have relates only to the Paradise Cove program which they chose not to sue in the Amended Complaint. Despite the colorful hyperbole plaintiffs' have not one fact to support claims against these defendants. These defendants assumed no duty to the Alvas, established no special relationship with the Alvas, made no representations of fact to the Alvas, and cause no damage to the Alvas. These defendants are entitled to summary judgment.

DATED this ____ day of August, 2003.

SILVESTER & CONROY, L.C.

_____
Fred R. Silvester
Spencer Siebers

Attorneys for Defendants World Wide Association of Specialty Programs, Teen Help, R&B Billing, Dixie Contract Services, Robert Lichfield, Karr Farnsworth and Brent Facer

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of August 2003, I caused to be served a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** by placing the same via first-class U.S. Mail, postage prepaid thereon to the following:

>Thomas M. Burton, Esq.
>5820 Stoneridge Mall Road, Suite 100
>Pleasanton, CA 94588
>Attorney for Plaintiffs

>and

>Thomas M. Burton, Esq.
>P.O. Box 427
>West Jordan, UT 84084-0427
>Attorney for Plaintiffs

Exhibits/ Attachments to this document have **not** been scanned.

Please see the case file.